# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:02cv540

| | |
|---|---|
| **STRATEGIC OUTSOURCING, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| **CONTINENTAL CASUALTY COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

**THIS MATTER** is before the Court on cross-motions for summary judgment filed by the parties (Doc. No. 45: Strategic Outsourcing's Motion; Doc. No. 47: Continental Casualty's Motion), and related briefs, responses, replies, and appendices. The Court also heard oral argument by the parties on January 18, 2006. Therefore, the motions are ripe for disposition.

I.  BACKGROUND

On January 1, 1998, Continental Casualty Co. ("CNA")(Defendant) began providing workers compensation insurance to a human resources leasing company called Strategic Outsourcing Inc. ("SOI")(Plaintiff). Such insurance was necessary to SOI's business to comply with state regulations and client contracts. SOI accepted CNA's "Guaranteed Cost Plan" which charged premiums based on an account rate of $3.40 per $100 of workers' compensation payroll. (Doc. No. 47: CNA Mem., Exhibit 3 at 8, 9). The agreement contained a provision stating:

> Additional Locations Or Exposures May Make It Necessary To Re-evaluate Rates, Premiums and Plan Factors – If, In Our Opinion, Such Additional Exposures, Premiums Anticipated And Prior Losses Represent Significant Changes From What Has Been Contemplated Herein.

(Doc. No. 47: CNA Mem., Exhibit 3 at 7 n.2)(capitalization in original).  A penalty provision also would have increased the rate if SOI did not maintain coverage for the full three-year term of the contract. (Doc. No. 47: CNA Mem., Exhibit 3 at 9).

On October 26, 1999, CNA's Underwriting Director, Jacqueline Bomar, sent a letter to SOI's insurance broker, Stephen Wolz, stating, "I regret to inform you that we will not be in a position to continue with the rate of $3.40 per $100 of Workers' Compensation Payroll." (Doc. No. 47: CNA Mem., Exhibit 11).  Bomar requested current payroll information in order to "start the renewal quotation process" for the year 2000. (Doc. No. 47: CNA Mem., Exhibit 11).  The parties attempted to negotiate a renewal agreement.  CNA's Executive Vice President for Business Operations, John Glancy, wrote a letter dated December 7, 1999, summarizing a meeting during which CNA informed SOI that a rate increase would be required for CNA "to continue to provide coverage beyond 12/31/99." (Doc. No. 47: CNA Mem., Exhibit 14).  On December 29, 1999, CNA agreed to extend coverage for thirty days at the current rate. (Doc. No. 46: SOI Mem., Exhibit 11).  On February 4, 2000, SOI's General Counsel and Vice President of Risk Management, William Michel, informed CNA that SOI would not agree to CNA's proposal to raise its rates. (Doc. No. 47: CNA Mem., Exhibit 21).  On February 14, 2000, Glancy wrote SOI that coverage ceased on January 31, 2000, when no renewal agreement was reached. (Doc. No. 46: SOI Mem., Exhibit 4, Glancy letter).[1]  On February 24, 2000, the parties entered an extension agreement providing coverage until SOI's replacement insurance took effect on March 1, 2000. (Doc. No. 47: CNA Mem., Exhibit 18).

---

[1]SOI did not number the separated attachments to its Memorandum.  For convenience, the Court will refer to the attachments as Exhibits 1 through 7.  For example, the deposition of John R. Glancy with its related documents is the fourth attachment, and will be collectively designated Exhibit 4.

SOI filed its lawsuit on December 27, 2002, claiming CNA breached the contract by attempting to increase the "guaranteed" rate, forced SOI by economic duress into the extension agreement, and engaged in bad faith and unfair trade practices because an affiliate of CNA stood to gain by SOI's loss of business if it could not maintain insurance coverage. (Doc. No. 1: Complaint). CNA countered in its answer that the contract provided for rate increases and that SOI mutually agreed to new terms. (Doc. No. 6: Answer and Counterclaim).

II.     SUMMARY JUDGMENT STANDARD

SOI seeks summary judgment on the issues of CNA's statute of limitations and accord and satisfaction defenses, but asserts there are contested issues on whether the facts supported CNA's attempt to re-rate its premiums. (Doc. No. 45: SOI Motion). CNA also seeks summary judgment on the affirmative defenses, but asserts the facts are undisputed about its contractual right to change its premiums. (Doc. No. 47: CNA Motion). CNA further seeks summary judgment on SOI's claims of deceptive trade practices and insurance bad faith claims. (Doc. No. 47: CNA Motion).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); accord Jack H. Winslow Farms, Inc. v. Dedmon, 615 S.E.2d 41, 43 (N.C. Ct. App. 2005).

III.   DISCUSSION

   A.   Statute of Limitations/Anticipatory Breach

Where the facts are not in conflict, whether a cause of action is barred by the statute of limitations is a question of law, and summary judgment is appropriate. Jack H. Winslow Farms, 615 S.E.2d at 43. On this issue, the parties do not dispute the facts, but rather the legal significance of the facts. CNA asserts that SOI's claims are time-barred because they were filed more than three years after CNA gave notice in October 1999 that the current rates would not be extended for another year. SOI counters that the October 1999 letter did not trigger the statute of limitations and that the Complaint was filed within three years of CNA's early cancellation of the coverage in February 2000.

Generally, an action for breach of contract in North Carolina must be brought within three years from the time a cause of action accrues, that is when the right to institute and maintain a suit arises. Penley v. Penley, 332 S.E.2d 51, 62 (N.C. 1985). Thus, "[t]he statute begins to run on the date the promise is broken." Id. North Carolina courts recognize the theory of anticipatory breach enabling one party to sue for damages immediately when the other party renounces its entire future performance under a contract. Cook v. Lawson, 164 S.E.2d 29, 32 (N.C. Ct. App. 1968). To be actionable, such a repudiation must be an expression, by words or conduct, of "a positive, distinct, unequivocal and absolute refusal to perform" Messer v. Laurel Hill Assocs., 378 S.E.2d 220, 223 (N.C. Ct. App. 1989) (internal quotations and citations omitted), and treated as a breach by the injured party, Gordon v. Howard, 379 S.E.2d 674, 676 (N.C. Ct. App. 1989).

Although North Carolina courts apply the doctrine of anticipatory breach, it does not appear that they have explicitly discussed when the statute of limitations is triggered in such a

4

situation. In Cook, the court stated the injured party "may treat the renunciation as a breach and sue for his damages at once," but did not state whether immediate action was required. 164 S.E.2d at 32. CNA relies on Henlajon, Inc. v. Branch Highways, Inc., 560 S.E.2d 598 (N.C. Ct. App. 2002), for its argument that the statute began to run in October 1999 with its first notice to SOI that the $3.40 rate would not be extended to the third year of the contract. In Henlajon, the court, however, found that the defendant's letter in that case was not an anticipatory breach, but rather an actual breach or denial that a contract existed at all. Id. at 336. Thus, the court did not have occasion to decide when the statute begins to run when a party gives notice of a future breach.

Other courts have found that "the statute of limitations ordinarily does not begin to run, and the cause of action does not accrue, until the date of the actual breach; that is, until the date on which performance is due." Ramey v. District 141, Association of Machinists and Aerospace Workers, et al., 378 F.3d 269, 279 (2d Cir. 2004) (citing Franconia Assoc. v. United States, 536 U.S. 129, 144, 122 S. Ct. 1993, 153 L. Ed. 2d 132 (2002) and Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988)). There is reason to believe North Carolina courts would apply this rule in the appropriate case. In Verede v. Koch, 380 S.E.2d 615, 618 (N.C. Ct. App. 1989), the North Carolina Court of Appeals held that the statute of limitations did not begin when one party gave notice that he would not be able to make further payments on an obligation. Instead, the court allowed the injured party to wait and see whether future performance would occur when due. Id. Additionally, the court found that the injured party's demand for payment and threat to file suit were not sufficient to start the limitations period. Id. at 617.

Here, the facts are similar to those in Verede. On October 26, 1999, and on December 7, 1999, CNA gave written notice to SOI that the $3.40 rate would not be extended for the

following year. CNA points to SOI's threats to sue and "furious" reaction to the letters as signs SOI considered the contract breached. However, SOI and CNA continued to perform under the contract and to negotiate the rate for the following year; thus, SOI did not treat the entire contract as repudiated. Additionally, the February 14, 2000, letter written by Glancy that actually terminated SOI's coverage shows that the earlier letter was not an unequivocal, absolute refusal to perform, as required for an anticipatory repudiation. In the February letter, Glancy states, "We first broached the subject of renewal negotiations in October of last year." (Doc. No. 46: SOI Mem., Exhibit 22) (emphasis added). Thus, the October letter was not a premature termination of coverage, but rather an invitation to negotiate a rate increase. Even if the October and December letters qualified as anticipatory notice of a future breach to occur on December 31, 1999, when the coverage period ended, SOI was entitled to wait and see whether CNA would ultimately decide to continue the $3.40 rate for the following year. Therefore, SOI's Compliant, filed December 27, 2002, was within three years of the notice of the actual termination of coverage on February 14, 2000, and SOI is entitled to summary judgment on CNA's statute of limitations defense.

    B.    Accord and Satisfaction

The parties also seek summary judgment on CNA's accord and satisfaction defense. CNA contends that SOI's action must be dismissed because the extension agreement entered in February 2000 modified the original contract to the satisfaction of the parties. SOI counters that the agreement did not contain a waiver of its rights to pursue remedies under the contract and that it entered the agreement under duress, negating the defense of accord and satisfaction.

"An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from

contract or tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution or performance, of such agreement." Cullen v. Valley Forge Life Ins., et al., 589 S.E.2d 423, 429 (N.C. Ct. App. 2003) (quoting Dobias v. White, 80 S.E.2d 23, 27 (N.C. 1954)). "Accord and satisfaction is a 'method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof, and an execution of such substitute agreement.'" Id. (quoting Shopping Center v. Life Insurance Corp., 279 S.E.2d 918, 924-25 (N.C. Ct. App. 1981) (quoting Prentzas v. Prentzas,131 S.E.2d 678, 680-81 (N.C. 1963)). "The word 'agreement' implies the parties are of one mind--all have a common understanding of the rights and obligations of the others--there has been a meeting of the minds." Id. (quoting Moore v. Bobby Dixon Assoc., 370 S.E.2d 445, 447 (N.C. Ct. App. 1988)).

"Normally, the existence of an accord and satisfaction is a question of fact for the jury." Id. "Establishing an accord and satisfaction ... as a matter of law requires evidence that permits no reasonable inference to the contrary and that shows the 'unequivocal' intent of one party to make and the other party to accept a lesser payment in satisfaction ... of a larger claim." Id., (quoting Moore v. Frazier, 305 S.E.2d 562, 564 (N.C. Ct. App. 1983)).

Here, CNA points to language in the extension agreement that it asserts establishes accord and satisfaction without resorting to parol evidence. In the fifth paragraph from the beginning of the document, a clause recites that "CNA and SOI have mutually agreed to the nonrenewal of the Program. . ." (Doc. No. 47: CNA Mem., Exhibit 18) (emphasis added). CNA argues that this language replaced a clause included in a previous draft submitted by SOI that would have reserved SOI's right to pursue its breach of contract claim. CNA's argument,

7

however, ignores an important phrase at the end of that paragraph that the agreement is "in accordance with the following terms and conditions." (Doc. No. 47: CNA Mem., Exhibit 18). Ten numbered paragraphs follow, none of which detail a waiver by SOI of its claims under the original contract. In contrast, in Paragraph Six, CNA expressly waives its right under the contract to penalties otherwise applicable to the non-renewal or cancellation of the program. Thus, the clear language of the agreement shows no intention of the parties for SOI to waive its claims under the original contract as a term or condition of the extension agreement.

The facts of this case also show that no reasonable juror could find that SOI unequivocally accepted the 30-day extension agreement in lieu of an entire year's coverage that the $3.40 rate to which SOI repeatedly asserted it was entitled. The essence of the defense is that the injured party willingly accepted something beyond the contemplation of the contract to settle a dispute. Here, CNA provided no consideration other than what SOI expected under the contract; that is, the continuation of the $3.40 rate for the month of February 2000. However, the agreement spared CNA the 90-day period of coverage that should have followed its cancellation of the contract on February 14, 2000. Additionally, the deposition testimony shows that neither party thought SOI waived its claims under the contract by entering the extension agreement. (Doc. No. 46: SOI Mem., Exhibit 3, Glancy at TR 208-209; Exhibit 4, Michel at TR 231-232). SOI further claims it entered the extension agreement under duress because it could not operate without insurance and it did not have time to obtain replacement coverage by the end of 1999; therefore, it was forced to enter the extension agreement to remain in business. Thus, the evidence falls fatally short of showing an unequivocal intent of SOI to substitute the limited benefits of the extension agreement for its larger claims under the contract.

Therefore, summary judgment in SOI's favor is appropriate on CNA's defense of accord and satisfaction.

C. CNA's Right to Increase Premiums

CNA argues it is entitled to summary judgment on its claim that the contract afforded it the right to increase SOI's premiums, which it decided to do in good faith. SOI admitted at oral argument that CNA had the right to review the risks and consider whether or not the rate should be changed. (TR at 96). However, SOI contends that the basis on which CNA made its decision was financially unreasonable and this fact-based issue must be resolved by the jury.

Every contract obliges the parties to act in good faith to perform their obligations under the agreement. Maglione v. Aegis Family Health Centers, 607 S.E.2d 286, 291 (N.C. Ct. App. 2005). Where a contract gives one party discretionary power, such as the unilateral right to terminate if dissatisfied, good faith is measured by an objective standard of reasonableness. MCI Constructors, Inc. v. City of Greensboro, No. 04-1395, 125 Fed. Appx. 471, 477 (4th Cir. Mar. 15, 2005) (citing Fulcher v. Nelson, 159 S.E.2d 519, 522 (N.C. 1968)); accord Mezzanote v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973) (dissatisfaction measured by reasonable business standards). Thus, CNA's argument that its decision should be reviewed for bad faith (Doc. No. 55: CNA Reply at 17; TR at 86) is too limited; instead, an objective standard of reasonableness applies. MCI Constructors, 125 Fed. Appx. at 477.

The contract contained a provision allowing CNA to reevaluate the rates and premiums, if, in its opinion additional exposures, premiums anticipated, and prior losses represented "significant changes from what ha[d] been contemplated" in the agreement. (Doc. No. 47: CNA Mem., Exhibit 3 at 7 n.2). CNA points to the exponential growth of SOI's business and the

9

losses CNA incurred as grounds for increasing the premium rate. SOI responds that CNA was unjustified in raising the rate because the premium was based on payroll; thus, as its business increased, so did the premium. Additionally, SOI claims that its business moved towards lower risk occupations; therefore, the risk to CNA was actually lowered during the relevant time period. These competing positions present genuine issues of material facts from which the jury will determine whether it was objectively reasonable for CNA to decide that "significant changes" had occurred from what had been contemplated in the agreement.

  D. Unfair and Deceptive Trade Practices Act Claims

Finally, CNA argues that it is entitled to summary judgment on SOI's claims under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and insurance bad faith claims because they arise out of a simple breach of contract dispute, without the presence of aggravating factors. SOI alleges that CNA committed unfair acts, such as retroactively canceling coverage, threatening to inform others of coverage cancellation, and illegally characterizing the program as a large-risk deductible plan for state tax purposes, that qualify as aggravating factors.

North Carolina General Statutes § 75-1.1 (2001) states that unfair or deceptive acts or practices in or affecting commerce are unlawful. "'To prevail on a claim of unfair and deceptive ... practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Cullen, 589 S.E.2d at 430 (quoting First Atl. Mgmt. Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998)). An unfair and deceptive practices claim is not barred simply because it arises out of a breach of contract claim. Id. "Ordinarily, '[u]nder section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act'; however, aggravating circumstances, such as

10

deceptive conduct by the breaching party, can trigger the provisions of the Act. Id. (quoting Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002)). Where the same course of conduct gives rise to a traditionally recognized cause of action, such as an action for breach of contract, and as well gives rise to a cause of action for violation of N.C.G.S. 75-1.1, damages may be recovered either for the breach of contract, or for violation of the UDTPA. Id.

However, in interpreting North Carolina's UDTPA, the Fourth Circuit recognized that "unfairness inheres in every breach of contract when one of the parties is denied the advantage for which he contracted." United Roasters, Inc. v. Colgate-Palmolive, Co., 649 F.2d 985, 992 (4th Cir. 1981). Thus, even an intentional breach of a valid contract does not violate the statute. Id. Instead, the court has looked for proof of deliberate deception, such as an insurance company knowing its position was invalid, but nevertheless using its power to force the insured to settle for less than what it was owed. Topsail Reef Homeowners Assoc. v. Zurich Specialties London, Ltd., 00-2115, 11 Fed. Appx. 225, 235 (4th Cir. May 25, 2001). Therefore, an insurance company's incorrect interpretation of a policy's term does not violate the statute where its decision is "'neither strained nor fanciful, regardless of whether it was correct.'" Id. at 233 (quoting Olive v. Great American Ins. Co., 333 S.E.2d 41, 46 (N.C. Ct. App. 1985).

Here, SOI's allegations about the unfairness of CNA's retroactive termination of coverage and threat to inform others of that termination do not constitute substantial aggravating factors beyond the inherent unfairness caused by the alleged breach. SOI has presented no proof that CNA knew its position regarding its right to terminate coverage or inform others of the termination was illegitimate, but nevertheless used its bargaining position to force a lesser settlement. In fact, the available evidence shows the opposite. Regarding the retroactive

11

termination, Glancy's February 14, 2000, letter establishes CNA's belief that SOI waived its termination notice rights through its broker when the first extension agreement provided coverage through January 2000. (Doc. No. 46: SOI Mem., Exhibit 4, Glancy letter). Additionally, CNA asserts it had a legal obligation under state law to notify the North Carolina Rate Bureau when it no longer provided coverage to SOI. (Doc. No. 55: CNA Reply at 17). Thus, the actions alleged to violate the statute were simply the inherent consequences of CNA's decision to terminate coverage when SOI would not agree to a rate increase, without any proof of deceptive conduct by CNA.

The allegation regarding CNA's classification of the program for state tax purposes does not provide a basis for SOI to assert a UDTPA violation. One of the required elements of a UDTPA claim is that the party was injured by the deceptive act. Cullen, 589 S.E.2d at 430. Here, SOI's expert witness admitted that SOI suffered no injury from the alleged underpayment of taxes by CNA. (Doc. No. 76: CNA Surreply, Hager at TR 159-160).

Therefore, summary judgment in favor of CNA is appropriate because no reasonable juror could find that its actions violated the UDTPA.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that SOI's motion for summary judgment (Doc. No. 45) is **GRANTED** regarding the statute of limitations defense and the accord and satisfaction defense.

**IT IS FURTHER ORDERED** that CNA's motion for summary judgment (Doc. No. 47) is **DENIED** regarding its affirmative defenses, but **GRANTED** regarding SOI's claims under the UDTPA.

Therefore, this case will proceed to trial on March 13, 2006, on the remaining issue of whether CNA's decision to increase the rates was objectively reasonable under the contract.

Signed: February 8, 2006

Robert J. Conrad, Jr.
United States District Judge