IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:02cv540

| | |
|---|---|
| STRATEGIC OUTSOURCING, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CONTINENTAL CASUALTY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER was before the Court on March 9, 2006, for pretrial conference. For the reasons stated from the bench, the Court made the following rulings:

1. The Court clarified that its decision on summary judgment (Doc. No. 108: Memorandum and Order at 10-12) dismissed Strategic Outsourcing's claim of insurance bad faith (Doc. No. 1: Complaint at 12-14). The Court's decision also disposed of CNA's defense that the extension agreement modified the contract. (Doc. No. 108: Memorandum and Order at 6-9). Therefore, the Court will not allow the presentation of argument or evidence of alleged bad faith conduct by CNA. Additionally, argument and evidence relating to the extension agreement may be offered for the specific and very limited issue of damages, that is to explain that coverage at the original rate was provided for January and February 2000 pending the termination of the contract.

2. The Court provided the parties with a draft statement of the issues for the jury and will consider modifications as agreed by the parties.

3. The Court invited further briefing and deferred ruling on the issue of whether any damages should be limited to those occurring during the 90-day period following the cessation of coverage or should include those occurring during the remaining 10 months of 2000. The parties agreed not to reference the disputed period of any damages in their opening statements. The parties also agreed that the measure of any damages is the difference between the amount Strategic Outsourcing paid for replacement insurance and what it would have paid to CNA for the relevant time period.

4. The Court determined that former employee Robert Fotsch may not serve as Strategic Outsourcing's corporate representative, and will be subject to the rule of sequestration, pursuant to Fed. R. Evid. 615. The Court granted CNA's Motion to Exclude the Testimony of Latimer Williams (Doc. No. 113). The Court denied CNA's Motion to Exclude the Testimony of Certain Witnesses (Doc. No. 114). The Court deferred ruling on CNA's Motion in Limine regarding certain expert witnesses (Doc. No. 123) and Strategic Outsourcing's Motion to Exclude Use of Barrow Deposition Testimony (Doc. No. 127). The Court advised the parties that expert witnesses will not be allowed to give legal opinions. The Court will hear further argument on particular witnesses before they testify and, if necessary, hold voir dire out of the presence of the jury to determine the admissibility of their proffered testimony. Therefore, expert witnesses should be available the day before their expected testimony.

5. The Court previously held, and SOI has conceded, that the contract afforded CNA the right to review the risks and consider whether or not the rate should be changed. (Doc. No. 108: Memorandum and Order at 9-10). Therefore, the Court will not allow argument or evidence to establish that either party subjectively believed the contract provided a guaranteed three-year

rate. Additionally, the Court emphasized that the relevant issue for the jury is whether CNA's decision to increase the rates was objectively reasonable under the contract. The contract dictates the circumstances to be considered in the "Additional Locations and Exposures" clause, which reads:

> Additional Locations Or Exposures May Make It Necessary To Re-evaluate Rates, Premiums and Plan Factors – If, In Our Opinion, Such Additional Exposures, Premiums Anticipated And Prior Losses Represent Significant Changes From What Has Been Contemplated Herein.

(Doc. No. 108: Memorandum and Order at 1). Proof relevant to those factors is relevant to the jury's determination; subjective opinions of witnesses are not.

6. The Court will conduct the voir dire of prospective jurors, with consideration of written questions submitted by the parties before and during jury selection. The Court's practice is to question twelve potential jurors at a time in the jury box. Each party may exercise up to 3 peremptory challenges and the Court will consider any challenges for cause. The Court will seat the first 8 jurors who are not struck by the parties or dismissed by the Court for cause. The Court will allow jurors to take notes. The Court took under advisement CNA's request to provide juror notebooks of exhibits in addition to using courtroom display technology. The parties have not agreed to a non-unanimous verdict or to a jury of fewer than 6 jurors.

Proceedings with the jury will begin at 9:30 a.m. each day. Any legal issues to be taken up outside the presence of the jury will begin earlier as directed by the Court. The parties should contact the Court if such need arises. The Court will give preliminary instructions before the presentation of argument. However, a jury charge conference will be held prior to finally instructing the jury at the close of proof. Opening statements are limited to 30 minutes. The

parties have agreed to provide 48 hours' notice of witnesses to be called and to attempt to reach stipulations regarding the admissibility of exhibits.

The Court may give further direction on the issues discussed during the pretrial conference as needed or requested by the parties.

Signed: March 10, 2006

Robert J. Conrad, Jr.
United States District Judge